UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

FORT MYERS DIVISION

YVONNE BROODIE,                                        CASE NO.

Plaintiff,

v.

LANDMARK HOSPITAL OF
SOUTHWEST FLORIDA, LLC

Defendant.
_____/

### COMPLAINT AND DEMAND FOR JURY TRIAL

YVONNE BROODIE (hereinafter referred to as "PLAINTIFF" or "BROODIE"), by and through her undersigned attorney, sues LANDMARK HOSPITAL OF SOUTHWEST FLORIDA, LLC (hereinafter referred to as "LANDMARK" or "DEFENDANT") and alleges and states as follows:

### JURISDICTION

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this is a civil action arising under Title VII, 29 U.S.C. § 621.

## VENUE

2. Venue is proper in this district under 42 U.S.C. § 2000e-5(f)(3), in that the unlawful employment practice was committed in Florida, 42 U.S.C. § 2000e-5(f)(3), in that the relevant employment records are maintained in this district, 42 U.S.C. § 2000e-5(f)(3), in that BROODIE worked in this district and would have continued to if the issues discussed herein had not occurred.

3. The DEFENDANT has its principal office in this district, and there is no other district that has a substantial connection to the claim.

## CONDITIONS PRECEDENT

4. BROODIE timely filed a Complaint of racial discrimination (including national origin) and retaliation with the Equal Employment Opportunity Commission (EEOC).

5. On or about August 29, 2025, the EEOC issued PLAINTIFF a Notice of Right to Sue. This Complaint has been filed within 90 days of receipt of that notice.

## PARTIES

6. BROODIE is domiciled in the United States.

7. BROODIE was an employee, as defined by Title VII.

8. Upon information and belief, Defendant is an employer as defined by Title VII and within 42 U.S.C.A. § 2000e(b) and whose principal place of business is in Lehigh Acres, Florida.

## FACTS

9. Plaintiff, BROODIE, brings this action against LANDMARK, for the violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a).

10. BROODIE is a Black Jamaican woman of African descent.

11. Plaintiff, BROODIE, was an employee for LANDMARK in its Fort Myers Lehigh Acres, Florida branch from approximately January 2024 until approximately December 2024.

12. Plaintiff's prior work experience made her an ideal candidate for the job, bringing experience and quality workmanship to the position.

13. During Plaintiff's employment, LANDMARK's co-workers would consistently say racial slurs and derogatory racist comments ("racist behavior") in the presence of BROODIE.

14. DEFENDANT discriminated against MS. BROODIE due to her race and national origin.

15. PLAINTIFF worked for LANDMARK in its Fort Myers, Florida headquarters, from approximately January 2024 to December 2024.

16. During PLAINTIFF's employment, DEFENDANT treated similarly situated non-Jamaican employees with more favor.

17. On July 5, 2024, a charge nurse, Juan, told BROODIE that her natural hair looked like "Whoopi" (referring to the actress Whoopi Goldberg). BROODIE replied that she did not look like Whoopi Goldberg.

18. On July 12, 2024, Juan called BROODIE "Mufassa" at the nurse's station. Another nurse, Nick, chuckled at this comment.

19. On July 17, 2024, the Director of Nursing, Olga, approached BROODIE and said, "this is how your hair looked when you had it out," while holding a mop topper pen. Olga then cut the mop topper pen hair and said, "ok good, now you look like student," referring to a black nursing student.

20. BROODIE reported these incidents to her supervisor and Human Resources via email on July 17, 2024.

21. BROODIE began experiencing anxiety and emotional distress related to these incidents, and contacted the company's Employee Assistance Program (EAP") starting on or around July 18, 2024. She sought counseling and took a month off work.

22. Upon returning to work, BROODIE's workspace had been changed, and she felt isolated. BROODIE returned also to find that LANDMARK had hired an individual named "Winza" to be BROODIE's lead. Winza was a social worker with less experience than BROODIE.

23. BROODIE contacted the EEOC regarding the discrimination and harassment she was experiencing at LANDMARK but did not file a charge at that time.

24. On December 11, 2024, BROODIE wrote a formal complaint regarding yet another incident continuing to create a hostile environment, this time involving CEO, John Ferrelli who exhibited hostile, inappropriate and intimidating behavior that made BROODIE feel unsafe in the workplace.

25. This particular incident involved BROODIE advising Mr. Ferrelli the status of a patient. Mr. Ferrelli responded in an extremely rude and disrespectful manner escalating to the degree of "shouting" at BROODIE publicly in the hallway of the facility berating her for not adhering to his earlier instruction, which was to manipulate the situation of the patient against the family's wishes. This direction happened during an earlier meeting where Mr. Ferrelli directed BROODIE and other staff members to manipulate the family's decision regarding this patient.

26. This latest incident left BROODIE visibly shaken and distressed, not only because of the embarrassment of the public humiliation but also because she was being subjected by a person in authority to act based on an unethical directive of Mr. Ferrelli.

27. As a result of the interaction and behavior displayed by the CEO that was not only inappropriate but created a distressing environment in the workplace for BROODIE, significant concerns about her physical and emotional safety in the workplace.

28. Additionally, PLAINTIFF's supervisor on multiple occasions treated her negatively.

29. PLAINTIFF's supervisor constantly limited her abilities to advance based on her race and national origin.

30. LANDMARK's management was aware of the racist behavior of BROODIE's co-workers.

31. Also during the subject time period, BROODIE attended a company meeting at LANDMARK.

32. During the meeting, management opened the floor for the team to speak freely on complaints of racism.

33. One of DEFENDANT's employees began expressing anger at the complaints of racism and made a threatening gesture while keeping direct eye contact with BROODIE.

34. This individual and/or other employee(s) of LANDMARK demanded BROODIE's thoughts and/or concerns about racism.

35. BROODIE then replied and expressed her concerns about racism in the workplace at LANDMARK. Specifically, BROODIE mentioned that employees were using derogatory terms and regularly referred to minorities in a negative manner.

36. Understandably, BROODIE no longer felt safe or welcome at LANDMARK.

37. The disparate treatment and harassment Plaintiff experienced during her employment at LANDMARK was so severe and pervasive as to alter the terms and conditions of BROODIE's employment and create a discriminatorily abusive working environment. LANDMARK either knew or should have known of the harassment and failed to intervene.

38. BROODIE suffered and continues to suffer damages as a result of Defendant, LANDMARK's, unlawful discriminatory actions, medical expenses,

emotional distress, past and future lost wages and benefits, attorney's fees, and the costs of bringing this action.

39. BROODIE has retained the services of undersigned counsel in the vindication of her rights and has agreed to pay reasonable fees and costs for such representation.

## COUNT I

### Racial Discrimination in Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a)

40. PLAINTIFF repeats and realleges paragraphs 1 through 39 of this Complaint as if fully set forth herein.

41. PLAINTIFF brings this action against LANDMARK for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et. Seq. ("Title VII").

42. PLAINTIFF is a member of a protected class under Title VII.

43. PLAINTIFF was qualified for her position at LANDMARK when she was disciplined and terminated.

44. In its employment practices, LANDMARK favors non-Haitian employees over Haitian employees.

45. Plaintiff was discriminated against in the following ways:

    a. Constant attempts to belittle Plaintiff;

  b. Constantly praising non-minorities who made mistakes;

  c. Humiliating Plaintiff in front of her peers;

  d. Defending other employees who engaged in the discrimination and misconduct after it was reported to Human Resources.

46. DEFENDANT disparately treated PLAINTIFF based on her race and national origin.

47. DEFENDANT violated BROODIE's rights under Title VII and, as a result, DEFENDANT is liable for damages.

48. BROODIE has suffered and continues to suffer damages as a result of DEFENDANT's unlawful discriminatory actions, including emotional distress, past and future lost wages and benefits, attorney's fees, and the costs of bringing this action.

49. DEFENDANT has violated Title VII, and will continue to violate Title VII if not enjoined, because LANDMARK maintains policies, programs and classifications that impermissibly discriminate on the basis of race and national origin. Accordingly, DEFENDANT has taken personnel actions in violation of Title VII's mandate that they be free from any discrimination based on race, and/or national origin.

WHEREFORE, Plaintiff, YVONNE BROODIE, respectfully requests this Honorable Court enter judgment against Defendant, LANDMARK HOSPITAL OF SOUTHWEST FLORIDA, as follows:

A. Accept jurisdiction over this matter;

B. Enter an order declaring that Defendant violated Plaintiff's civil rights under Title VII, and enjoining Defendant from such conduct in the future;

C. Award Plaintiff compensatory damages for emotional pain, suffering, mental anguish, humiliation, loss of enjoyment of life, and other nonpecuniary losses;

D. Award Plaintiff damages which include but are not limited to past and future loss of wages and benefits, retirement benefits, plus interest;

E. In lieu of reinstatement, award Plaintiff front pay (including benefits);

F. Award to Plaintiff prejudgment interest on all monetary recovery obtained;

G. Award to Plaintiff all costs and reasonable attorneys' fees incurred in connection with this action;

H. Award to Plaintiff, if applicable, punitive damages; and

    I. Grant Plaintiff such additional or alternative relief as the Court deems just and proper.

## COUNT II

### Retaliation in Violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e et al.)

50. PLAINTIFF repeats and realleges paragraphs 1 through 39 of this Complaint as if fully set forth herein.

51. PLAINTIFF brings this action against LANDMARK HOSPITAL OF SOUTHWEST FLORIDA for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et. Seq. ("Title VII").

52. PLAINTIFF is a member of a protected class under Title VII.

53. After PLAINTIFF complained of her disparate treatment in or around February 2022, DEFENDANT retaliated against her by reprimanding and terminating her, at least in part, based on her race and national origin (Haitian).

54. DEFENDANT violated BROODIE's rights under Title VII and, as a result, DEFENDANT is liable for damages.

55. BROODIE has suffered and continues to suffer damages as a result of DEFENDANT's unlawful discriminatory actions, including emotional distress, past and future lost wages and benefits, attorney's fees, and the costs of bringing this action.

WHEREFORE, Plaintiff, YVONNE BROODIE, respectfully requests this Honorable Court enter judgment against Defendant, LANDMARK HOSPITAL OF SOUTHWEST FLORIDA, as follows:

A. Accept jurisdiction over this matter;

B. Enter an order declaring that Defendant violated Plaintiff's civil rights under Title VII, and enjoining Defendant from such conduct in the future;

C. Award Plaintiff compensatory damages for emotional pain, suffering, mental anguish, humiliation, loss of enjoyment of life, and other nonpecuniary losses;

D. Award Plaintiff damages which include but are not limited to past and future loss of wages and benefits, retirement benefits, plus interest;

E. In lieu of reinstatement, award Plaintiff front pay (including benefits);

F. Award to Plaintiff prejudgment interest on all monetary recovery obtained;

G. Award to Plaintiff all costs and reasonable attorneys' fees incurred in connection with this action;

H. Award to Plaintiff, if applicable, punitive damages; and

 I. Grant Plaintiff such additional or alternative relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury in this action of all issues so triable.

Dated on November 21, 2025.

        Light Path Law, P.A.
        Counsel for Plaintiff
        2069 First Street, Suite 100
        Fort Myers, FL 33901
        Phone: (239) 689-8481
        Fax: (239) 294-3930
        rgallagher@lightpathlaw.com
        kcapra@lightpathlaw.com

        By: */s/ Rebecca A. Gallagher*
          Rebecca Gallagher, Esq.
          Florida Bar No. 784591